**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VINH DU, derivatively on behalf of ENTEROMEDICS, INC. and individually and on behalf of himself and all other similarly situated stockholders of ENTEROMEDICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GARY BLACKFORD, DAN W. GLADNEY, CAROL GOLDFISCHER, BOBBY I. GRIFFIN, LORI C. MCDOUGAL, NICOLAS L. TETI JR., JON T. TREMMEL, NAGEEB A. ANSARI, PETER M. DELANGE, PAUL F. HICKEY, SCOTT YOUNSTROM, and ENTEROMEDICS, INC.,<br><br>Defendants. | Civil Case No. 1:17-cv-00194-VAC-CJB |

# DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS


Of Counsel:

DORSEY & WHITNEY LLP

Theresa M. Bevilacqua (MN No. 031500X)
(*to be admitted pro hac vice*)
bevilacqua.theresa@dorsey.com
Chelsea R. McLean (NY No. 4757027)
(*to be admitted pro hac vice*)
mclean.chelsea@dorsey.com
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Tel: (612) 340-2600

DORSEY & WHITNEY (DELAWARE) LLP

Eric Lopez Schnabel (DE Bar No. 3672)
schnabel.eric@dorsey.com
Robert W. Mallard (DE Bar No. 4279)
mallard.robert@dorsey.com
Alessandra Glorioso (DE Bar No. 5757)
glorioso.alessandra@dorsey.com
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Tel: (302) 425-7171


DATED: April 17, 2017

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....1

STATEMENT OF FACTS ....2

I. EnteroMedics Seeks to Regain Compliance with Nasdaq Listing Requirements for the Benefit of Its Stockholders ....2

II. Stockholders Approve and the Board Implements Proposal Nos. 1, 2, and 3....5

ARGUMENT....7

I. The Complaint Should be Dismissed Because It Does Not Satisfy Delaware's Demand Requirement for Derivative Actions ....9

A. All of Plaintiff's Claims Are Unquestionably Derivative Under Delaware Law ....9

B. Plaintiff Failed to Make a Pre-Suit Demand on the Board and Does Not Adequately Allege That Demand is Excused ....10

1. Plaintiff Fails to Allege That a Majority of the Director Defendants Were "Interested" in the Amended Plan or the Adjustment to Plan Capacity .... 11

2. Plaintiff Fails to Allege Facts That Create a Reasonable Doubt that the Board's Actions Were a Product of a Valid Exercise of Business Judgment.... 16

II. The Complaint Fails to State Valid Claims for Breach of Fiduciary Duty or Unjust Enrichment....17

A. Plaintiff Fails to Allege Facts That Support His Breach of Fiduciary Duty Claims....17

B. Plaintiff Fails to Allege Facts That Support His Unjust Enrichment Claim....20

CONCLUSION....20



4830-2909-2935\1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Wainscott*,
No. 11-00297-RGA, 2013 U.S. Dist. LEXIS 161556 (D. Del. Nov. 13, 2013) ................12, 15

*Abrams v. Wainscott*,
No. 11-297-RGA, 2012 U.S. Dist. LEXIS 121425 (D. Del. Aug. 21, 2012) ..............12, 13, 15

*Agostino v. Hicks*,
845 A.2d 1110 (Del. Ch. 2004)..........................................................................................9

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) .......................................................................................11, 12, 16

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)..........................................................................................2, 7, 8

*Bader v. Blankfein*,
No. 07-CV-1130 (SLT) (JMA), 2008 U.S. Dist. LEXIS 102698 (E.D.N.Y.
Dec. 18, 2008)..........................................................................................................16

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ......................................................................................11, 12, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................7, 8

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ..........................................................................................12

*Brinckerhoff v. Tex. E. Prods. Pipeline Co., LLC*,
C.A. No. 2427-VCL, 2008 Del. Ch. LEXIS 174 (Del. Ch. Nov. 25, 2008)......................18, 19

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..........................................................................................2

*Calma v. Templeton*,
114 A.3d 563 (Del. Ch. 2015)..........................................................................................20

*In re Caterpillar Inc.*,
No. 12-1076-LPS-CJB, 2014 U.S. Dist. LEXIS 78680 (D. Del. June 10, 2014)....................11

*Cavi v. Evolving Sys.*,
No. 15-1211-RGA/MPT, 2017 U.S. Dist. LEXIS 22902 (D. Del. Feb. 17,
2017) ..........................................................................................................................17



**Error! Unknown document property name.**
4830-2909-2935\1

*Dynamis Therapeutics, Inc. v. Alberto-Culver Int'l, Inc.*,
2010 U.S. Dist. LEXIS 100639 (D. Del. Sept. 22, 2010) ....... 17

*El Paso Pipeline GP Co., L.L.C v. Brinckerhoff*,
152 A.3d 1248 (Del. 2016) ....... 9

*Feldman v. Cutaia*,
951 A. 2d 727 (Del. 2008) ....... 9, 10

*Feldman v. Cutaia*,
956 A.2d 644 (Del. Ch. 2007), *aff'd* 951 A.2d 727 (Del. 2008) ....... 10

*Freedman v. Mulva*,
Civ. No. 11-686-LPS-SRF, 2014 U.S. Dist. LEXIS 31778 (D. Del. Mar. 12, 2014) ....... 16

*Freedman v. Redstone*,
753 F.3d 416 (3d Cir. 2014) ....... 2, 10, 11

*Halpert v. Zhang*,
No. 12-1339-SLR-SRF, 2015 U.S. Dist. LEXIS 42560 (D. Del. Apr. 1, 2015) ....... 9

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
906 A.2d 766 (Del. 2006) ....... 9

*In re Orchard Enters., Inc.*,
88 A.3d 1 (Del. Ch. 2014) ....... 18

*Orman v. Cullman*,
794 A.2d 5 (Del. Ch. 2002) ....... 12

*Pfeffer v. Redstone*,
965 A.2d 676 (Del. 2009) ....... 18

*Postorivo v. AG Paintball Holdings, Inc.*,
No. 2991-VCP, 3111-VCP, 2008 Del. Ch. LEXIS 29 (Del. Ch. Feb. 29, 2008) ....... 12, 14

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ....... 9, 10

*In re Transkaryotic Therapies, Inc.*,
954 A.2d 346 (Del. Ch. 2008) ....... 11

*Warhanek v. Bidzos*,
Civ. No. 12-263-RGA-SRF, 2013 U.S. Dist. LEXIS 133099 (D. Del. Sept. 18, 2013) ....... 20

**Statutes**

Section 174 of the General Corporation Law ....................................................................19

**Other Authorities**

Del. Ch. Ct. R. 23.1..........................................................................................................10

Fed. R. Civ. P. 23.1............................................................................................................10

Fed. R. Civ. P. 23.1(b)(3)...................................................................................................10

Rule 12(b)(6)...............................................................................................................7, 17

## INTRODUCTION

The Complaint [D.I. 1] asserts on behalf of plaintiff Vinh Du ("Plaintiff") and other similarly situated stockholders of Defendant EnteroMedics, Inc. ("EnteroMedics" or the "Company") derivative claims for breach of fiduciary duty and unjust enrichment, and a direct claim for breach of fiduciary duty, against current members of EnteroMedics' Board of Directors (the "Board" or the "Director Defendants") and certain executive officers (collectively, "Defendants").[1] The Complaint should be dismissed in its entirety because it fails to satisfy Delaware's demand requirement for derivative actions, and fails to state valid claims for breach of fiduciary duty or unjust enrichment under applicable law.

Plaintiff's three claims are derivative under Delaware law. Each claim complains of stock dilution allegedly experienced by EnteroMedics' stockholders as a result of the Board's allegedly improper recommendation and implementation of changes to the Company's stock incentive award plan for officers, non-employee directors, and other employees. In order to pursue these derivative claims on behalf of the Company, Plaintiff must show that he made a demand on the Board before instituting this action or that demand is excused. To show that demand is excused under Delaware law, Plaintiff must demonstrate that the Board was "interested" in the challenged conduct or that there is reason to doubt that the Board's action was the product of its business judgment. The Complaint does neither. After admitting that Plaintiff did not make any presuit demand on the Board, the Complaint offers no more than conclusory arguments and speculation that demand is excused. The Complaint should be dismissed for this reason alone.

[1] The Board is comprised of seven experienced healthcare executives and physicians. *See* EnteroMedics, *Board of Directors*, http://www.enteromedics.com/about_us/bod.asp (last visited Apr. 15, 2017).

Additionally, the Complaint should be dismissed because it fails to adequately plead breach of fiduciary duty or unjust enrichment claims under Delaware law. In particular, the Complaint fails to allege any false or misleading statement or omission by the Board. Plaintiff admits that the Board disclosed the very actions about which Plaintiff now complains. Finally, the unjust enrichment claim should be dismissed because the Complaint is devoid of any facts even suggesting that Defendants failed to provide services to the Company in exchange for the compensation they received.

## STATEMENT OF FACTS

This summary of key facts drawn from Complaint, documents referenced in the Complaint, and documents memorializing the challenged conduct.[2] For purposes of this motion only, Defendants assume the truth of the well-pleaded facts in the Complaint, but do not assume legal conclusions, argument, or surmise. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### I. EnteroMedics Seeks to Regain Compliance with Nasdaq Listing Requirements for the Benefit of Its Stockholders

EnteroMedics is a medical device company incorporated in Delaware whose common stock trades on The Nasdaq Capital Market (the "Nasdaq"). (Compl. ¶¶ 9, 25.) The Nasdaq Marketplace Rules require that companies satisfy various criteria to remain listed on the exchange. (*Id.* ¶ 25.) In May 2016, Nasdaq notified EnteroMedics that the Company was not in compliance with two listing requirements: (1) that the Company must have a minimum of $2.5 million stockholders' equity (the "Stockholders' Equity Requirement"); and (2) that the

[2] The Schedule 14A Definitive Proxy Statement filed by the Company with the SEC on November 17, 2016 in connection with a special meeting of stockholders scheduled for December 12, 2016 (the "Proxy") (Attached hereto as Exhibit A to the contemporaneously filed Declaration of Chelsea R. McLean ("McLean Decl.") is incorporated by reference in the Complaint and can therefore be considered upon a motion to dismiss. *See Freedman v. Redstone*, 753 F.3d 416, 423 (3d Cir. 2014); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

trading price of the Company's common stock must have a minimum bid price of $1.00 per share (the "Minimum Bid Rule"). (*Id.*)

After receiving the May 2016 Nasdaq notice, the Company developed three proposals to comply with Nasdaq listing criteria, as well as proposed amendments to the Company's stock incentive plan. Those proposals were disclosed to stockholders in the Proxy filed by with the SEC on November 17, 2016 in connection with a special meeting of stockholders scheduled for December 12, 2016 (the "Special Meeting"). (*Id.* ¶ 28.)

In Proxy Proposal No. 1, the Board recommended stockholder approval of an amendment to the Company's Certificate of Incorporation to increase the number of authorized shares of common stock from 150 million to 300 million (the "Authorized Share Increase"). (Proxy at 8-13.) The Authorized Share Increase would allow the Company to conduct a public offering of common stock in an amount sufficient for the Company to regain compliance with Nasdaq's Stockholder Equity Requirement. (*Id.*)

In Proxy Proposal No. 2, the Board recommended stockholder approval of an amendment to EnteroMedics' Certificate of Incorporation to effect a reverse stock split of the Company's issued and outstanding shares of common stock (the "Reverse Stock Split") in order for the Company to regain compliance with the Minimum Bid Rule. (*Id.* at 14-15, 21.) The Proxy states that if Proposal No. 2 is approved by stockholders:

> the Board will have the authority, but not the obligation, in its sole discretion and without further action on the part of the [Company] stockholders, to select the Reverse Stock Split [at a ratio between 1-for-20 and 1-for-70].

(*Id.* at 14.)

In Proxy Proposal No. 3, the Board recommended stockholder approval of the Company's Second Amended and Restated 2003 Stock Incentive Plan (the "Amended Plan") for officers, non-employee directors, and other employees. (*Id.* at 22.) The Proxy explains that the

limited number of shares available for stock-based awards to officers, non-employee directors, and other employees under the existing plan (the “Plan Capacity”) restricts the Board’s ability to make stock-based awards. (*Id.*) The Proxy advises that increasing the Plan Capacity from 1,320,000 to 40,000,000 shares under the Amended Plan—or to 28.6% of the Company’s outstanding shares as of November 12, 2016—would be beneficial because stock-based awards are “instrumental in attracting, motivating and retaining talented employees, management personnel and non-employee directors.” (*Id.*; Compl. ¶ 44.)

The Proxy attaches the entirety of the Amended Plan, including section 4(c), which specifies that the Board retains full discretion to adjust Plan Capacity in the event of corporate transactions like a reverse stock split or public offering. (Proxy at B-5-6.) Section 4(c) states:

> (c) Adjustments. In the event that the Committee shall determine that any dividend or other distribution (whether in the form of cash, Shares, other securities or other property), recapitalization, stock split, reverse stock split, reorganization, merger, consolidation, split-up, spin-off combination, repurchase or exchange of Shares or other securities of the Company, issuance of warrants or other rights to purchase Shares or other securities of the Company or other similar corporate transaction or event affects the Shares such that an adjustment is necessary in order to prevent dilution or enlargement of the benefits or potential benefits intended to be made available under the Plan, then the Committee shall, in such a manner as it may deem equitable, adjust any or all of (i) the number and type of Shares (or other securities or other property) that thereafter may be made the subject of Awards, (ii) the number and type of Shares (or other securities or other property) subject to outstanding Awards and (iii) the purchase or exercise with respect to any Award; provided, however, that the number of Shares covered by any Award or to which such Award relates shall always be a whole number.

(*Id*. at B-5-6.)

The Complaint alleges that because “a reverse stock split was imminent, the extent to which the Board intended to adjust the Plan Capacity in response to the split was highly material to stockholders in deciding whether to approve the Reverse Stock Split on the one hand, the and the Amended Plan on the other.” (Compl. ¶ 58.) The Complaint alleges that in order to allay stockholders’ concerns about dilution, the Board advised in the Proxy:

> The [Current] Plan currently authorizes an aggregate of 1,320,000 shares of [the Company's] common stock for issuance under all stock-based awards. If the [Amended] Plan is approved by our stockholders, the maximum number of shares authorized for issuance under the Incentive Plan will be increased by 38,680,000 shares to 40,000,000 shares . . . . Additionally, the adoption of the [Amended] Plan would occur prior to the implementation of the Reverse Stock Split, and consequently, the number of shares of [the Company's] common stock authorized for issuance under all stock based awards granted pursuant to the second A&R Incentive Plan will be adjusted by the Reverse Stock Split ratio selected by the Board."

(*Id.* ¶ 60 (emphasis omitted); *see also* Proxy at 23.)[3] According to the Complaint, this statement reflects the Board's assurance that any adjustment to Plan Capacity following a Reverse Stock Split would be proportionate to the ratio utilized in the Reverse Stock Split. (Compl. ¶ 59.) However, the Complaint does not point to any statement by Defendants that the Board would refrain from exercising its discretion to adjust Plan Capacity following a recapitalization effected through the Reverse Stock Split ***and*** a subsequent public offering of Company stock (the "Recapitalization"), as permitted by section 4(c) of the Amended Plan, nor does one exist.

## II. Stockholders Approve and the Board Implements Proposal Nos. 1, 2, and 3

EnteroMedics stockholders approved the Authorized Share Increase, the Reverse Stock Split, and the Amended Plan at the Special Meeting (*id.* ¶ 66), and the Board subsequently effected a Reverse Stock Split at a 1-for-70 ratio on December 27, 2016 (*id.* ¶ 67). Following the Reverse Stock Split, EnteroMedics filed a Form 424b4 Prospectus (the "Prospectus") with the SEC on January 18, 2017, which disclosed that the Company was conducting a public offering of stock (the "Offering") in order to bring the Company into compliance with the Stockholders' Equity Requirement. (*Id.* ¶ 72.)

---

[3] The Complaint alleges that the same assurance appears in Proxy Proposal No. 2. (*Id.* ¶ 61.)

The Prospectus discloses that the Board "intends to grant stock options for the Company's management team and board of directors under the [Amended] Plan exercisable, in the aggregate, for up to a number of shares of common stock equal to 20% of the Company's fully diluted shares of common stock outstanding after the [O]ffering." (*Id.* ¶ 73.) It further states that the Board "intends to, pursuant to the terms of the [Amended] Plan, adjust the number of shares available for awards under the [Amended] Plan not in direct proportion with the Reverse Stock Split in order to ensure the Company has an adequate number of shares available under the [Amended] Plan to attract, motivate, incentivize and retain employees, management personnel and non-employee directors going forward." (*Id.* ¶ 74 (emphasis omitted).)

Accordingly, on February 14, 2017, the Company filed a Form 8-K with the SEC, in which it disclosed that the Board had reduced Plan Capacity from 40,000,000 to 3,000,000 shares, or by a factor of 13.33. (*Id.* ¶ 75.) As stated in the 8-K:

> On February 8, 2017, the [Board] confirmed that, pursuant to the terms of the [Amended Plan] the number of shares of common stock authorized under the Plan had been reduced from 40,000,000 shares to 3,000,000 shares as a result of the recent recapitalization of the Company consisting of the reverse stock split of the Company's common stock effected on December 27, 2016, and the public offering of the Company's stock which closed on January 23, 2017. Pursuant to the terms of the [Amended] Plan, the Board is required to adjust the number of shares authorized under the [Amended] Plan as it determines necessary after a recapitalization or other similar corporate transaction to prevent dilution or enlargement of the benefits or potential benefits intended to be made available under the [Amended] Plan.

(*Id.* ¶ 76.) The Complaint alleges that the Board should have adjusted the Plan Capacity from 40,000,000 to 571,429 shares consistent with the 1-for-70 ratio utilized in the Reverse Stock Split, rather than at a ratio of 1-for-13.33. (*Id.* ¶ 75.) However, the Complaint does not cite any statement by Defendants that the Board would refrain from exercising its discretion to adjust Plan Capacity following the Recapitalization. Indeed, the Complaint admits that the Proxy

disclosed to shareholders that the Board would have full discretion under the Amended Plan to adjust Plan Capacity following corporate transactions like the Recapitalization. (*Id.* ¶ 53.)

On February 8, 2017, the Board issued 1,093,450 in stock options to Board members and certain executive officers under the Amended Plan (the "February 2017 Options") (*id.* ¶¶ 79-80), including 466,500 to the Company President and CEO; 142,200 to the Company CFO and CCO; 93,250 to each of three Company Senior Vice Presidents; and between 30,000 and 40,000 to each of the six non-employee Board members. (*Id.* ¶ 80.) The Complaint alleges that the February 2017 Options diluted the Company's stockholders by 522,021 shares more than would have been available if the Board had increased the Plan Capacity by a 1-for-70 ratio following the Reverse Stock Split. (*Id.* ¶ 81.) The Complaint acknowledges, however, that the Director Defendants were previously eligible to receive awards from the 797,080 shares of common stock available under the existing plan, and that this amount would have been sufficient to award the six non-employee Director Defendants the same amounts as they received under the February 2017 Options. (Compl. ¶¶ 40-41.)[4]

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While the standard does not require "detailed factual allegations," it does

---

[4] The Complaint also acknowledges that the Board adjusted Plan Capacity from 40,000,000 to 3,000,000 shares on the basis that no more than 20% of Company's post-Offering outstanding common stock would be granted as stock awards under the Amended Plan. (Compl. ¶¶ 73, 76). Thus, the adjustment that the Complaint purports diluted shareholders actually resulted in shareholders owning a ***greater*** percentage of the corporation than they might have owned had the Board exercised its discretion not to effect a Reverse Stock Split. As described previously, the Amended Plan, absent an adjustment to Plan Capacity, permitted stock awards up to 28.6% of the Company's then-outstanding shares. (*Id.* ¶ 44.)

demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A pleading that "tenders naked assertions devoid of further factual enhancement" or offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to meet this standard and must be dismissed. *Id.*; *Twombly*, 550 U.S. at 555.

In reviewing a motion to dismiss, a court first separates the bald legal conclusions from the well-pleaded factual allegations to determine whether they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. A complaint is only "plausible on its face" when it contains "content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. Complaints that plead facts that are "merely consistent with a defendant's liability" fail because they "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

The Complaint seeks rescission of the Amended Plan and disgorgement of the February 2017 Options on the basis that the Proxy contained false and misleading statements with respect to the Board's adjustment to Plan Capacity, which facts were material to stockholders' ability to cast an informed vote on the Amended Plan. (*Id.* ¶¶ 82-87.) Specifically, the Complaint asserts: (1) a derivative claim against the Director Defendants for breach of fiduciary duty (*id.* ¶¶ 101-107); (2) a derivative claim against certain Company officers for unjust enrichment (*id.* ¶¶ 108-113); and (3) a non-derivative putative class claim against the Director Defendants for breach of fiduciary duty (*id.* ¶¶ 114-118). The Complaint should be dismissed in its entirety because it fails to satisfy Delaware's demand requirement for derivative actions, and fails to state valid claims for breach of fiduciary duty or unjust enrichment under applicable law.

## I. The Complaint Should be Dismissed Because It Does Not Satisfy Delaware's Demand Requirement for Derivative Actions

### A. All of Plaintiff's Claims Are Unquestionably Derivative Under Delaware Law

To determine whether a claim is derivative or direct, the Court must look to "the body of the complaint, not to the plaintiff's designation or stated intention." *Agostino v. Hicks*, 845 A.2d 1110, 1121 (Del. Ch. 2004) (internal quotation omitted). There are two dispositive questions the Court must ask in determining whether the claims are direct or derivative under Delaware law: "Who suffered the alleged harm—the corporation or the suing shareholder individually—and who would receive the benefit of the recovery or other remedy." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). To state a direct claim, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039. In considering who suffered the alleged harm, the corporation or the suing stockholders individually, the Court should look to the nature of the alleged injury, not the purported duty owed or the theory of liability pleaded. *See Feldman v. Cutaia*, 951 A. 2d 727, 733 (Del. 2008) (citing *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 771-74 (Del. 2006)).

Here, Plaintiff alleges he was harmed by allegedly misleading statements because the Amended Plan was approved, which diluted his stock. Plaintiff, however, cannot, "prevail without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039. Rather, Plaintiff's theory of harm is wholly dependent on damage to EnteroMedics that Plaintiff suffered only indirectly. Delaware courts hold that "allegations of diluted stock value are fundamentally derivative and cannot constitute a direct cause of action." *See*, *e.g., Halpert v. Zhang*, No. 12-1339-SLR-SRF, 2015 U.S. Dist. LEXIS 42560, at *9 (D. Del. Apr. 1, 2015); *see also El Paso Pipeline GP Co., L.L.C v. Brinckerhoff*, 152 A.3d 1248, 1263 n.76 (Del. 2016) ("[D]ilution

claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result . . . of the reduction of the value of the entire corporate entity, of which each share of equity represents an equal fraction." (internal quotation omitted)); *Feldman v. Cutaia*, 956 A.2d 644, 657 (Del. Ch. 2007), *aff'd* 951 A.2d 727, 731 (Del. 2008) ("[To find plaintiffs allege direct claims] would swallow the general rule that equity dilution claims are solely derivative.").

For example, in *Feldman*, the plaintiff alleged the defendants breached their fiduciary duties when approving a merger agreement that resulted in an allegedly improper payout to company executives, thereby diluting his interest in the company. 951 A.2d at 729-30. In holding that the shareholder claims were derivative, the Delaware Supreme Court observed:

> Where all of the corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct under *Tooley*. In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.

*Id.* at 733. Here, all of Plaintiff's claims allege injury in the form of diluted stock value and are therefore derivative.

### B. Plaintiff Failed to Make a Pre-Suit Demand on the Board and Does Not Adequately Allege That Demand is Excused

"[B]efore bringing a derivative suit, a shareholder must make a pre-suit demand on the company's board of directors to give the board an opportunity to bring the suit on behalf of the corporation." *Freedman v. Redstone*, 753 F.3d 416, 423-424 (3d Cir. 2014) (citing Fed. R. Civ. P. 23.1(b)(3)); *see also* Del. Ch. Ct. R. 23.1. While "Federal Rule of Civil Procedure 23.1 provides the procedural vehicle for addressing the adequacy of a derivative plaintiff's pleadings, the substantive requirements of demand are a matter of state law." *Freedman*, 753 F.3d at 424

(internal quotation and citations omitted). Because a derivative suit "could intrude into the sphere of managerial control, the demand requirement balances the interest of shareholders in pursuing valid claims against the interests of the board in managing the corporation." *Id.*

A court may excuse a plaintiff's failure to satisfy the presuit demand requirement if the demand would have been futile because the board could not make an independent determination of whether to bring the suit. However, "alleging that demand is excused is a difficult feat." *In re Caterpillar Inc.*, No. 12-1076-LPS-CJB, 2014 U.S. Dist. LEXIS 78680, at *21 (D. Del. June 10, 2014) (internal quotation and citations omitted). In general, "directors are entitled to a presumption that they were faithful to their fiduciary duties," and the putative plaintiff bears the burden of overcoming this presumption. *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004) (emphasis omitted). "To meet that burden under Delaware law, a complaint must include particularized facts creating reasonable doubt either that "(1) 'the directors are disinterested and independent,' or that (2) 'the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *Freedman*, 753 F.3d at 424 (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)). "If either prong is satisfied, presuit demand is excused." *Id.* (internal quotation and citation omitted).

Because Plaintiff concedes that he did not make a demand on the Board prior to instituting this action (Compl. ¶ 90), Plaintiff must show that demand is excused under at least one prong of the *Aronson* test to avoid dismissal. Plaintiff wholly fails to satisfy either prong.

### 1. Plaintiff Fails to Allege That a Majority of the Director Defendants Were "Interested" in the Amended Plan or the Adjustment to Plan Capacity

In order to allege facts creating reasonable doubt as to whether the company's directors are disinterested and independent, a plaintiff must show that the ***majority*** of the directors are either interested or not independent. *See, e.g., In re Transkaryotic Therapies, Inc.*, 954 A.2d

346, 363 (Del. Ch. 2008) (quoting *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002)). Under Delaware law, a "director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Beam*, 845 A.2d at 1049 n.21 (internal quotation and citations omitted). A director is "independent" if his or her decision "is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.

To establish demand futility based on a director's purported "interest" in a transaction, a plaintiff must allege specific facts that demonstrate the directors could not independently consider a stockholder's presuit demand. Conclusory allegations that directors are "interested" in a transaction do not suffice to excuse demand. *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000) ("[C]onclusory allegations are not considered as expressly pleaded facts or factual inferences."); *Postorivo v. AG Paintball Holdings, Inc.*, No. 2991-VCP, 3111-VCP, 2008 Del. Ch. LEXIS 29, at *23 (Del. Ch. Feb. 29, 2008) (dismissing plaintiff's claims where the "[c]omplaint . . . mak[es] generalized allegations regarding most if not all directors, without any particularized factual support). Moreover, director "interest" is analyzed on a transaction-by-transaction basis. The inquiry focuses on whether the majority of board members could independently consider a stockholder's presuit demand concerning a specific occurrence. *See, e.g.*, *Abrams v. Wainscott*, No. 11-297-RGA, 2012 U.S. Dist. LEXIS 121425, at *2 (D. Del. Aug. 21, 2012) ("The demand futility analysis proceeds transaction-by-transaction.").

For example, in *Abrams v. Wainscott*, No. 11-00297-RGA, 2013 U.S. Dist. LEXIS 161556 (D. Del. Nov. 13, 2013), a Delaware district court dismissed the plaintiff's derivative

claims because it found that the plaintiff had failed to adequately plead demand futility. The *Abrams* plaintiff alleged, *inter alia*, that stockholders were coerced into voting for certain provisions in a stock incentive plan as a result of statements made in the company proxy statement. *Id.* at *2. The *Abrams* plaintiff further alleged that demand was excused for his claims because "all of the members of the Board are eligible to participate in the [stock incentive plan] and are interested in the nearly unlimited stock option payments the Compensation Committee can award them under the plan." *Id.* at *8 (internal citation omitted). The Delaware District Court rejected the plaintiff's argument, finding that the fact that the pool of shares available for stock incentive payments increased was not sufficient to raise a reasonable doubt that the majority of the directors were disinterested in the challenged proposals. In particular, the *Abrams* court emphasized that the "[d]irectors' ability to grant themselves stock remain[ed] unaffected by the proxy vote and exist[ed] regardless of any of the proxy proposals." *Id.* at *9.

The same is true here. Plaintiff offers no more than conclusory and speculative allegations that demand is excused because the majority of the Direct Defendants were "interested" in the Amended Plan or the Board's adjustment to Plan Capacity following the Offering. Indeed, Plaintiff's factual allegations concerning demand futility comprise a mere two paragraphs of the Complaint.

First, Plaintiff alleges in paragraph 91 that demand is excused because the Board's "actions are not and could not have been a good faith exercise of business judgment [.]" In particular, Plaintiff alleges that "[e]ach Board member was responsible for adopting the Amended Plan, making the false and misleading representations in the Proxy, and then immediately administering, or permitting the Amended Plan to be administered, in a manner that contradicts what stockholders were led to believe." (Compl. ¶ 91.)

Second, Plaintiff alleges in paragraph 92 that demand is excused because "each Board member is interested in this litigation, and would not be able to impartially consider a demand." In particular, Plaintiff purports that "each Board member received stock awards under the Amended Plan following its purported approval. To the extent the Amended Plan is rescinded, each of those awards will be null and void. Each Board member thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action that would force them to disgorge their awards." (*Id.* ¶ 92.)

While Plaintiff alleges that the Defendant Directors "received stock awards under the Amended Plan," and that the totality of these stock awards are inconsistent with the Director Defendants' alleged proportionality assurances in the Proxy, Plaintiff pleads no facts showing that the stock awards received by ***each*** of the six non-employee Director Defendants was a product of the challenged conduct such that a majority of the Director Defendants are interested in this litigation, and would not be able to impartially consider a demand. *See Postorivo*, 2008 Del. Ch. LEXIS 29, at *23 (noting that establishing demand futility under Aronson's first prong "is necessarily a detailed, fact-intensive, director-by-director analysis").

In fact, the Complaint suggests exactly the opposite. Paragraphs 40 and 41 of the Complaint acknowledge that the Director Defendants were eligible to receive awards from the 797,080 shares of common stock available under the existing plan whether or not the Amended Plan is approved. (*Id.* ¶¶ 40-41.) And paragraph 80 of the Complaint denotes that the six non-employee Director Defendants, who comprise six of seven seats on the Board, each received between 30,000 and 40,000 options as a result of the February 2017 Options. By Plaintiff's own account, these amounts would have been available for stock awards to non-employee Director Defendants regardless of whether the Amended Plan was approved by stockholders or the Plan

Capacity was adjusted in accordance with the 70-for-1 ratio used in the Reverse Stock Split (*i.e.*, decreased to 571,429 shares). Just like the plaintiff in *Abrams*, Plaintiff here fails to satisfy the demand futility requirements because the Directors could have rewarded themselves the same or more options under the prior, existing plan. *Abrams*, 2013 U.S. Dist. LEXIS 161556 at *9.

Notably, Plaintiff does not allege that, absent approval of the Amended Plan or the Board's allegedly disproportionate adjustment to Plan Capacity, these six Director Defendants would not have received stock options comprising 30,000 to 40,000 shares. Plaintiff also does not allege that corrective action taken by the Board as a result of a demand would necessarily involve disgorgement of these six Director Defendants' options, as opposed to disgorgement of some portion of the more than 700,000 in options awarded to Company officers, as is specifically sought by Plaintiff in Count II of his Complaint. (Compl. ¶ 112.)

Plaintiff has thus pleaded no facts suggesting that the six non-employee Director Defendants—who comprise the majority of the Board—"are interested in the litigation" or have a "strong financial incentive to maintain the status quo." *See Abrams*, 2013 U.S. Dist. LEXIS 161556 at *9 (finding demand not excused where "[d]irectors' ability to grant themselves stock remain[ed] unaffected by the proxy vote and exist[ed] regardless of any of the proxy proposals"). To the contrary, Plaintiff's factual allegations indicate that the stock options issued to these Director Defendants were consistent with Board's supposed proportionality assurances in the Proxy, and that disgorgement of the modest number of options awarded to them would not be necessary to remedy the harm alleged by Plaintiff. Because Plaintiff has failed to carry his burden of showing that the majority of Board members are interested in the litigation and could not have impartially considered a presuit demand, demand is not excused.

### 2. Plaintiff Fails to Allege Facts That Create a Reasonable Doubt that the Board's Actions Were a Product of a Valid Exercise of Business Judgment

If a plaintiff fails to show that the majority of the board is "interested" in the challenged conduct, a presumption arises that the board's actions were the product of a valid exercise of business judgment under the second prong of the *Aronson* standard. *Beam*, 845 A.2d at 1049. To overcome this presumption, a plaintiff must plead sufficient particularized facts to "raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *Freedman v. Mulva*, Civ. No. 11-686-LPS-SRF, 2014 U.S. Dist. LEXIS 31778, at *12 (D. Del. Mar. 12, 2014) (internal quotation and citation omitted).

Federal courts applying Delaware law hold that derivative claims based on allegedly false disclosures in proxy statements do not create a reasonable doubt that the disclosures were the product of a business judgment unless the plaintiff establishes that a board of directors acted knowingly and intentionally in making the allegedly false disclosures. *See, e.g.*, *Bader v. Blankfein*, No. 07-CV-1130 (SLT) (JMA), 2008 U.S. Dist. LEXIS 102698, at *17-18 (E.D.N.Y. Dec. 18, 2008) ("If shareholders could elect to sue on behalf of a corporation without consulting the board of directors whenever they deemed a proxy statement to contain materially false information, shareholders could effectively usurp the board's decision as to whether litigation was merited."). Thus, where a plaintiff fails to allege a director's knowing and intentional decision to mislead stockholders with factual particularity, demand is not excused. *Mulva*, 2014 U.S. Dist. LEXIS 31778, at *16-17.

The Complaint fails to create a reasonable doubt that the Amended Plan or the Board's adjustment to Plan Capacity were the product of a valid exercise of business judgment. While the Complaint points to the Board's alleged assurance in the Proxy that Plan Capacity would be

adjusted in accordance with the ratio utilized for any Reverse Stock Split as an allegedly false and misleading statement, the Complaint contains no factual allegations that the Director Defendants acted knowingly or intentionally when they made such assurances or subsequently adjusted Plan Capacity in a manner supposedly inconsistent with their prior assurances.

In fact, the Complaint admits that the Amended Plan allows the Board to exercise its discretion in adjusting the Plan Capacity following corporate events like the Recapitalization (Compl. ¶ 53), and that the Board ultimately determined to adjust the Plan Capacity in a manner "*not* in direct proportion with the Reverse Stock Split in order to ensure the Company has an adequate number of shares available under the [Amended] Plan to attract, motivate, incentivize and retain employees, management personnel and non-employee directors" following the Offering. (*Id.* ¶ 74 (emphasis in original).) These admissions confirm that the Board exercised its business judgment when it recommended and implemented the Amended Plan, and do not suggest, much less allege with factual particularity, that the Board acted fraudulently or in bad faith when describing the various proposals in the Proxy.

## II. The Complaint Fails to State Valid Claims for Breach of Fiduciary Duty or Unjust Enrichment

The Complaint should also be dismissed because it fails to adequately allege claims for breach of fiduciary duty or unjust enrichment. "[T]o survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Cavi v. Evolving Sys.*, No. 15-1211-RGA/MPT, 2017 U.S. Dist. LEXIS 22902, at *7 (D. Del. Feb. 17, 2017) (internal quotation omitted).

### A. Plaintiff Fails to Allege Facts That Support His Breach of Fiduciary Duty Claims

In assessing whether a plaintiff has stated a valid claim for breach of fiduciary duty, federal courts look to Delaware law. *See, e.g., Dynamis Therapeutics, Inc. v. Alberto-Culver*

*Int'l, Inc.*, 2010 U.S. Dist. LEXIS 100639, at *9-10 (D. Del. Sept. 22, 2010).

Under Delaware law, "[t]o state a claim for breach of the fiduciary duty of disclosure on the basis of a false statement or representation, a plaintiff must identify (1) a material statement or representation in a communication contemplating stockholder action (2) that is false." *Pfeffer v. Redstone*, 965 A.2d 676, 685 (Del. 2009) (internal quotation and citation omitted). Similarly, to state a claim of partial, misleading disclosure, Delaware law requires that a plaintiff "plead facts identifying a (1) perhaps voluntary, but (2) materially incomplete (3) statement (4) made in conjunction with solicitation of stockholder action that (5) requires supplementation or clarification through (6) corrective disclosure of perhaps otherwise material, but reasonably available information." *Id.* at 688 (internal quotation and citation omitted). In assessing whether a particular disclosure misled shareholders, Delaware courts consider the "total mix" of information disclosed to shareholders. *Brinckerhoff v. Tex. E. Prods. Pipeline Co., LLC*, C.A. No. 2427-VCL, 2008 Del. Ch. LEXIS 174, at *16 (Del. Ch. Nov. 25, 2008).

Because the Complaint asserts that the directors made "materially false" and "misleading" statements in the Proxy that induced Plaintiff and other shareholders to approve the Amended Plan, Plaintiff must plead sufficient facts to allege the directors failed to "disclose fully and fairly all material information within the board's control" necessary to advise shareholders regarding the Amended Plan. *In re Orchard Enters., Inc.*, 88 A.3d 1, 17 (Del. Ch. 2014). The Complaint utterly fails to do this.

In particular, Plaintiff's breach of fiduciary duty claims should be dismissed because the Proxy disclosed to shareholders the very actions about which Plaintiff now complains. On page 24 of the Proxy, the Board advised that it was retaining discretion to:

> adjust the Incentive Plan or outstanding awards in a manner it deems equitable if it is necessary in order to prevent the dilution or enlargement of such benefits or

> potential benefits in the case of a stock dividend or other distribution, ***recapitalization***, stock split, merger, repurchase or exchange of shares of our common stock or other securities, issuance of warrants or other rights or other similar corporate transaction or event. (Emphasis added.)

Section 4(c) of the Amended Plan, attached to the Proxy, likewise advised shareholders that the Board was retaining discretion to adjust Plan Capacity following corporate events like the Recapitalization. (Proxy at B-5-6.)

The Complaint ignores the Board's unequivocal disclosures, and focuses solely on the statement in the Proxy that Plan Capacity "will be adjusted by the Reverse Stock Split ratio selected by the Board." Plaintiff argues that by virtue of this statement, the Board agreed to surrender the broad discretion afforded to it under section 4(c) of the Amended Plan and committed to never again modify Plan Capacity except for an adjustment proportionate to the contemplated Reverse Stock Split. Not surprisingly, Plaintiff fails to point to anything in the Proxy or Amended Plan that supports his argument. When read in its entirety, the "total mix" of information contained in the Proxy makes clear that the Board retains full discretion to adjust Plan Capacity following a significant corporate event like the Recapitalization. Plaintiff's mischaracterizations of the Proxy cannot support a claim for breach of fiduciary duty. *See, e.g.*, *Brinckerhoff*, 2008 Del. Ch. LEXIS 174, at *16 ("[The] inclusion of facts showing that information was in fact delivered to shareholders in a reasonable manner so that it would be a part of the total mix to be considered by them defeats conclusory claims to the contrary.").[5]

---

[5] Additionally, any damages Plaintiff seeks in connection with his breach of fiduciary duty claims are barred by Article VI of the December 27, 2016 Sixth Amended and Restated Certificate of Incorporation. Article VI provides that the Director Defendants "should not be personally liable to the Corporation of its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involved intentional misconduct, or a knowing violation of law,( iii) under Section 174 of the General Corporation Law, or (iv) for any transaction from which the director derived an improper

### B. Plaintiff Fails to Allege Facts That Support His Unjust Enrichment Claim

Plaintiff's unjust enrichment claim, which is brought against different defendants but is premised on exactly the same conduct as Plaintiff's breach of fiduciary claims (*cf.* Compl. ¶¶ 101 (citing "allegations of paragraphs 1-92" in support of derivative breach of fiduciary duty claim) and 108 (citing "allegations of paragraph 1-92 and 101-107 [Count I for Breach of Fiduciary Duty]" in support of unjust enrichment claim)), and like Plaintiff's breach of fiduciary claims seeks rescission of the February 2017 Options (*cf. id*. ¶¶ 106 and 112), should be dismissed for all of the reasons discussed herein. Delaware courts hold that where a plaintiff pleads an unjust enrichment claim that is entirely duplicative of a simultaneously-plead breach of fiduciary duty claim, the claims should be treated in the same manner on a motion to dismiss. *See, e.g.*, *Calma v. Templeton*, 114 A.3d 563, 592 (Del. Ch. 2015).

Additionally, Plaintiff's unjust enrichment claim should be dismissed because the Complaint fails to allege that Defendants received the February 2017 Options without providing services to the Company. *See, e.g.*, *Warhanek v. Bidzos*, Civ. No. 12-263-RGA-SRF, 2013 U.S. Dist. LEXIS 133099, at *35-36 (D. Del. Sept. 18, 2013) (dismissing unjust enrichment claim where plaintiff "fail[ed] to allege that the Director Defendants did not provide the services promised in exchange for the compensation awards[.]")

## CONCLUSION

The Complaint should be dismissed in its entirety because it fails to satisfy Delaware's requirements for derivative actions and does not state valid claims for breach of fiduciary duty or unjust enrichment under applicable law.

---

personal benefit." (Ex. 3.1 of EnteroMedics Dec. 28, 2016 Form 8-K at 4 (McLean Decl., Ex. B).) Because the Complaint fails to allege that the Director Defendants acted disloyally or in bad faith, Plaintiff is prohibited from seeking damages for the alleged breach of fiduciary duty.

DATED this 17th day of April, 2017.

DORSEY & WHITNEY (DELAWARE) LLP

By: /s/ Eric Lopez Schnabel
Eric Lopez Schnabel (DE No. 3672)
schnabel.eric@dorsey.com
Robert W. Mallard (DE No. 4279)
mallard.robert@dorsey.com
Alessandra Glorioso (DE No. 5757)
glorioso.alessandra@dorsey.com
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Tel: (302) 622-8820

Theresa M. Bevilacqua (MN No. 031500X)
(*to be admitted pro hac vice*)
bevilacqua.theresa@dorsey.com
Chelsea R. McLean (NY No. 4757027)
(*to be admitted pro hac vice*)
mclean.chelsea@dorsey.com
DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Tel: (612) 340-2600

*Attorneys for Defendants Gary Blackford, Dan W. Gladney, Carl Goldfischer, Bobby I. Griffin, Lori C. McDougal Nicholas L. Teti Jr., Jon T. Tremmel, Nageeb A. Ansari, Peter M. Delange, Paul F. Hickey, Scott Youngstrom, and Enteromedics, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VINH DU, derivatively on behalf of ENTEROMEDICS, INC. and individually and on behalf of himself and all other similarly situated stockholders of ENTEROMEDICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GARY BLACKFORD, DAN W. GLADNEY, CAROL GOLDFISCHER, BOBBY I. GRIFFIN, LORI C. MCDOUGAL, NICOLAS L. TETI JR., JON T. TREMMEL, NAGEEB A. ANSARI, PETER M. DELANGE, PAUL F. HICKEY, SCOTT YOUNSTROM, and ENTEROMEDICS, INC.,<br><br>Defendants. | Civil Case No. 1:17-cv-00194-UNA |

## CERTIFICATE OF SERVICE

I, Alessandra Glorioso, Esq. hereby certify that on the 17th day of April 2017, I caused a copy of the foregoing document to be electronically filed through the Court's Case Management/Electronic Case File ("CM/ECF") System and served on all parties who have electronically entered a notice of appearance through the notice of filing generated by the Court's CM/ECF System.

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 N. Market St.
12th Floor
Wilmington, DE 19801

Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
Purcell Julie & Lefkowitz LLP
65 Broadway, Suite 828
New York, New York 10006

DATED this 17th day of April, 2017.

DORSEY & WHITNEY (DELAWARE) LLP

By: /s/ Alessandra Glorioso
Eric Lopez Schnabel (DE No. 3672)
schnabel.eric@dorsey.com
Robert W. Mallard (DE No. 4279)
mallard.robert@dorsey.com
Alessandra Glorioso (DE No. 5757)
glorioso.alessandra@dorsey.com
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Tel: (302) 622-8820

*Attorneys for Defendants Gary Blackford, Dan W. Gladney, Carl Goldfischer, Bobby I. Griffin, Lori C. McDougal Nicholas L. Teti Jr., Jon T. Tremmel, Nageeb A. Ansari, Peter M. Delange, Paul F. Hickey, Scott Youngstrom, and Enteromedics, Inc.*