IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VINH DU, derivatively on behalf of ENTEROMEDICS, INC. and individually and on behalf of himself and all other similarly situated stockholders of ENTEROMEDICS, INC., | : : : : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 17-cv-194 |
| GARY BLACKFORD, DAN W. GLADNEY, CARL GOLDFISCHER, BOBBY I. GRIFFIN, LORI C. MCDOUGAL, NICHOLAS L. TETI JR., JON T. TREMMEL, NAGEEB A. ANSARI, PETER M. DELANGE, PAUL F. HICKEY, SCOTT YOUNGSTROM, and ENTEROMEDICS, INC. | : : : : : : : : | JURY TRIAL DEMANDED CLASS ACTION |
| Defendants, | : : | |
| and | : : | |
| ENTEROMEDICS, INC., | : : | |
| Nominal Defendant. | : | |

M E M O R A N D U M


EDUARDO C. ROBRENO, J.                                        September 28, 2018

Presently before the Court is the parties' "Joint Motion for Preliminary Approval

of Class Action and Derivative Settlement and Notice to Stockholders." If approved, the

settlement will resolve the instant matter, in which Plaintiff alleges that the Defendants,

executive officers and members of the board of directors of Enteromedics, Inc. ("Enteromedics"

or the "Company"), breached their fiduciary duties to the stockholders. For the reasons that

follow, the Court will grant the motion, conditionally certify the class, preliminarily approve the

proposed class action settlement, and approve the form, content, and manner of giving notice to the class.

**I.      BACKGROUND**

      A.      <u>Factual Background and Procedural History</u>

      On February 24, 2017, Plaintiff filed a derivative class action complaint on behalf of EnteroMedics, alleging claims for breach of fiduciary duty and unjust enrichment against Defendants. Plaintiff alleged that Defendants breached their fiduciary duties by: (1) making false and misleading statements in connection with soliciting stockholder approval of: (a) an amendment to EnteroMedics's Certificate of Incorporation to effect a reverse stock split of the Company's outstanding and issued shares of common stock (the "Reverse Stock Split"); and (b) an amendment to the Company's Second Amended and Restated 2003 Stock Incentive Plan (the "Stock Plan") that increased the number of shares available for issuance under the Stock Plan; and (2) granting and receiving stock options in February 2017 after the Reverse Stock Split and Stock Plan were approved by stockholders.

      Defendants moved to dismiss, and after a hearing, the Court denied the motion. The parties then engaged in significant discovery. Towards the end of discovery, after more fully understanding the strengths and weaknesses of their positions, the parties began settlement discussions and negotiated the current proposed settlement agreement. The Court held a hearing on the motion for preliminary approval of the settlement on September 24, 2018.

      B.      <u>The Proposed Class Action Settlement</u>

      The terms of the proposed class action settlement agreement are set forth in the Stipulation of Settlement and Compromise (the "Settlement Agreement"). Mot. Ex. A, ECF No. 36-1. The basic terms are outlined below.

1.      The Class

The class is defined as:

a non-opt-out class for settlement purposes of all record holders
and beneficial owners of common stock of EnteroMedics who held
or owned such stock during the Class Period (defined below),
including any and all of their respective successors-in-interest,
successors, predecessors-in-interest, predecessors, representatives,
trustees, executors, administrators, estates, heirs, legatees,
devisees, assigns and transferees, immediate and remote, and any
other person or entity acting for or on behalf of any of the
foregoing. Excluded from the Class are Defendants and their
immediate family, any entity in which any Defendant has a
controlling interest, and any successors-in-interest thereto.

Id. at 5. The class period is defined "the period of November 3, 2016 through
February 24, 2017, inclusive." Id.

2.      The Proposed Settlement Terms

The Settlement Agreement provides for the cancellation and rescission of the
stock options at issue, and stockholders will have the opportunity to vote on any additional stock
options for Defendants made in connection with the rescission. Second, the board of directors is
required to make proportional adjustments to the Stock Plan and other Company equity plans to
account for any changes in EnteroMedics's capitalization, thus protecting stockholders from
unanticipated dilution. Third, the board of directors is amending the Company's equity plan to
add a specific provision imposing an annual cap on equity compensation for non-employee
directors and will seek stockholder approval of this amendment.

All costs associated with notice to the class will be borne by EnteroMedics. The

Settlement Agreement also provides for an award of attorneys' fees and expenses of $190,000,[1]

and a $4,000 incentive award for Plaintiff which will be paid out of the attorneys' fees.

  In exchange for the benefits provided by the settlement, class members agree to

release all claims that they alleged or could have alleged in the action.

## II. DISCUSSION

  Under Federal Rule of Civil Procedure 23(e), the settlement of a class action

requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement

agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id.

When a court is presented with a class settlement agreement before the district court has issued a

class certification order — a procedural posture that results in what is often termed a "settlement

class" — the Advisory Committee's notes to the 2003 Amendment to Rule 23 contemplate that

"the decisions on certification and settlement" may "proceed simultaneously." Fed. R. Civ. P.

23(e).

  While the exact process a district court should follow when presented with a

settlement class is not prescribed by Rule 23, under Third Circuit law, the court must determine

that the settlement class meets the requirements for class certification under Rule 23(a) and (b),

and must separately determine that the settlement is fair to that class under Rule 23(e). In re Nat'l

Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014); In re Gen.

Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 778 (3d Cir. 1995)

(providing that settlement class status "should not be sustained unless the record establishes, by

---

[1]  At the hearing, counsel asserted that this award was close to the current lodestar amount, with only a fractional modifier. Counsel also provided that Purcell, Julie & Lefkowitz, LLP would receive 90% of the attorney's fees and Farnan, LLP would receive 10%.

findings of the district judge, that the [ ]requisites of [ ] Rule [23(a) and (b)] are satisfied"). In re Gen. Motors Corp., 55 F.3d at 778.

The Federal Judicial Center's Manual for Complex Litigation (Fourth) explains that "review of a proposed class action settlement generally involves two hearings." In re Nat'l Football League, 775 F.3d at 581 (quoting Manual for Complex Litigation § 21.632 (4th ed. 2004)). In the first hearing, or "preliminary fairness review," counsel submit the proposed terms of the settlement to the court, and the court makes a "preliminary fairness evaluation." Id. (quoting Manual for Complex Litigation § 21.632).

If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard, opt out of the class, or object to the settlement. See Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5); Manual for Complex Litigation § 21.633.

After class members are notified, the court proceeds with the second hearing, the formal "fairness hearing" as required by Rule 23(e)(2). Manual for Complex Litigation § 21.633. If the court ultimately concludes that the settlement is "fair, reasonable, and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). In the instant motion, Plaintiff seeks preliminary approval.

A.     Whether Class Certification Is Proper

During the preliminary fairness evaluation, a court must make a preliminary determination on class action certification for the purpose of issuing a notice of settlement. In re Nat'l Football League, 775 F.3d at 586. Although the court will undertake a "rigorous analysis" as to whether class certification is appropriate at the later fairness hearing, compliance with Rule 23(a) and (b) must still be analyzed at this juncture. Id. at 582-83.

Under Rule 23(a), Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(2), under which Plaintiff seeks class certification, requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. " Shelton v. Bledsoe, 775 F.3d 554, 561 (3d Cir. 2015) (internal quotation marks omitted).

> [F]or certification of a 23(b)(2) class seeking only declaratory or injunctive relief, a properly defined 'class' is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2) and our guidance in Barnes [v. Am. Tobacco Co.], 161 F.3d [127,] 143 [3d Cir. 1998]]; and (3) is capable of the type of description by a "readily discernible, clear, and precise statement of the parameters defining the class," as required by Rule 23(c)(1)(B) and our discussion in Wachtel [ex rel. Jesse v. Guardian Life Ins. Co. of Am.], 453 F.3d [179,] 187 [(3d Cir. 2006]). No additional requirements need be satisfied."

Id., at 563.[2]

1.      Rule 23(a) Factors

a.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to

---

[2]        As a result, the Third Circuit's ascertainability requirement is not applicable in a Rule 23(b)(2) case. Shelton, 775 F.3d at 563.

maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds forty, the numerosity prong has been met. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here as the Company has 54,924,998 outstanding shares, which the parties asserted represents thousands of class members.

### b.    Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality element requires that the plaintiffs "share at least one question of fact or law with the grievances of the prospective class." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

In this case, there are adequate common questions of fact and law, including: (1) whether the proxy was materially misleading; (2) whether Plaintiff and the other members of the class were harmed as a result; (3) whether Defendants breached its fiduciary duties by issuing the proxy and administering the Stock Plan in a manner that was inconsistent with representations made in the proxy; and (4) whether Plaintiff and the class are entitled to injunctive relief as a result.

### c.    Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether

the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." <u>Baby Neal v. Casey</u>, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 532 (3d Cir. 2004). The typicality threshold is low. <u>Seidman v. American Mobile Sys., Inc.</u>, 157 F.R.D. 354, 360 (E.D. Pa. 1994).

This element is satisfied because Plaintiff's claims are typical of the claims of the other members of the class and their interests are aligned since they were all unable to cast an informed vote on the Reverse Stock Split and Stock Plan Amendment as a result of Defendants' alleged misconduct.

d.    <u>Adequacy of Representation</u>

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." <u>Amchem v. Windsor</u>, 521 U.S. 591, 625 (1997).  The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>, 148 F.3d 283, 312 (3d Cir. 1998) (internal quotation marks omitted). Regarding the qualifications of counsel, Fed. R. Civ. P. 23(g) provides that, in appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

After reviewing relevant documents, the Court concludes that Plaintiff's counsel, Purcell Julie & Lefkowitz, LLP of New York and Farnan, LLP of Delaware, have substantial experience working on behalf of stockholders of Delaware corporations and are well-qualified to represent the class. Plaintiff's counsel have asserted that opposing counsel and they frequently litigate breach of fiduciary claims and have the necessary expertise and knowledge to identify the underlying wrongdoing, bring the litigation in a representative capacity, and negotiate the proposed settlement. Counsel further contend that they have spent significant time, effort, and resources on the case, demonstrating their commitment to the class. The Court finds no reason to doubt these assertions.

Second, Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief. Defendants' alleged breach of fiduciary duty impacted all Company stockholders by preventing them from casting an informed vote on important corporate business, which, the class alleges, tainted the stock options Defendants issued following that vote. The Court concludes that there are no conflicts of interest between the Plaintiff and the class such that the adequacy of representation requirement is met.

In sum, Plaintiff has demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

2.    Rule 23(b)(2) Factors

As provided, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A class under Rule 23(b)(2) is proper if it: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2); and (3) is capable of being described in a readily discernible, clear, and precise statement of the parameters defining the class, as required by Rule 23(c)(1)(B). Shelton, 775 F.3d at 561.

Here, the class meets the requirements of Rule 23(a). Moreover, the class is cohesive in that there are no apparent individualized issues among the class members. See Barnes, 161 F.3d at143 (providing that a court "must determine whether a proposed (b)(2) class implicates individual issues"). All of the class members have the same issues and seek the same relief. Finally, in that the parties have narrowly defined the class as shareholders during a finite time period, the class parameters are clear and readily discernable.

B.     Whether the Proposed Settlement Is Fair

In approving a class action settlement, the court must determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 316-17 (3d Cir. 1998). In deciding whether to grant preliminary approval of a proposed class action settlement, the court is required to determine only whether "'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorney, and whether it appears to fall within the range of possible approval.'" In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting Mehling v. N.Y. Life Ins., 246 F.R.D. 467, 472 (E.D. Pa. 2007)); see also 4 Newberg on Class Actions § 13:11 (5th ed.) (providing that "the court is not actually 'approving' the settlement at this first stage but

simply 'reviewing' the settlement to determine whether it is reasonable enough to direct notice to the class"). A settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. Mehling, 246 F.R.D. at 472.

In making this preliminary determination, the Court's "first and primary concern is whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness." In re Nat'l Football League, 301 F.R.D. at 198. The Court must also consider whether the settlement negotiations occurred at arm's length, whether there was significant investigation of Plaintiff's claims, and whether the proposed settlement provides preferential treatment to certain class members. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). In Girsh, the Third Circuit listed factors a court should consider when determining whether a settlement is fair, reasonable and adequate. While the Court will engage in a more fulsome analysis of the Girsh factors in relation to the final approval, they are relevant to guide the Court at the preliminary stage as well.[3]

In this case, for over a year, experienced attorneys litigated a motion to dismiss and engaged in substantial discovery before engaging in arm's-length negotiations. As a result, it appears that all parties were in a position to understand the strengths and weaknesses of the case. The case is fairly complex and would have required significant funds to engage in expert discovery, bring to trial, and file post-trial motions. While each side believes their claims are

---

[3]         The Girsh factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d at 157.

meritorious, there would be substantial risk to both parties in going to trial, related to how the fact finder viewed the actions of the board of directors. The injunctive relief received through the settlement appears to alleviate the concerns of the class by remedying the alleged harm and protecting against a reoccurrence. The Court finds that there is a reasonable basis for presuming that the fairness, adequacy, and reasonableness of the Settlement Agreement will be demonstrated during the final approval process. Facially, the Settlement Agreement does not disclose grounds to doubt its fairness or other obvious deficiencies. As a result, it appears proper under Rule 23(e)(2).

     C.     <u>Whether the Notice Is Adequate</u>

     The Court further concludes that the notice of the class action settlement submitted by the parties is adequate. Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). Unlike the more stringent notice requirements under Rule 23(b)(3), the Rules merely state that in a Rule 23(b)(2) case, "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

     Here, the notice outlines the basic terms of the Settlement Agreement; details the factual background and procedural history of the action; and provides a description of the class, the reasons and benefits of the settlement, the scope of the releases, counsel's anticipated fee and expense application, the whereabouts, date, and time of the final approval hearing, and the rights of stockholders to object to the Settlement Agreement and to appear at the hearing. Furthermore, counsel for Plaintiff and Defendants are identified in the notice, as well are the addresses and telephone numbers where stockholders can contact them to seek additional information.

     Within twenty-one days of entry of the order preliminarily approving the Settlement Agreement, the notice will be mailed to all EnteroMedics's stockholders of record or

class members at their last known address appearing in the stock transfer records maintained by EnteroMedics. <u>See</u> <u>Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.</u>, 758 F.2d 86, 90-91 (3d Cir. 1985)(noting that "first-class mail and publication regularly have been deemed adequate under the stricter [Rule 23(b)(3)] notice requirements"). The Court finds the notice program for this Rule 23(b)(2) action acceptable.

## III.   CONCLUSION

In that Rules 23(a) and (b)(2) have been met, preliminary certification of the settlement class appears proper. Moreover, the terms in the settlement agreement and the form of notice appear fair, reasonable, and adequate. As a result, the Court will grant Plaintiffs' motion for preliminary approval of the settlement, conditionally certify the settlement class, and approve the notice program.

An appropriate order follows.