IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VINH DU, derivatively on behalf of ENTEROMEDICS, INC. and individually and on behalf of himself and all other similarly situated stockholders of ENTEROMEDICS, INC., | : : : : : : |
| Plaintiff, | : : |
| v. | : CIVIL ACTION NO. 17-cv-194 |
| | : |
| GARY BLACKFORD, DAN W. GLADNEY, CARL GOLDFISCHER, BOBBY I. GRIFFIN, LORI C. MCDOUGAL, NICHOLAS L. TETI JR., JON T. TREMMEL, NAGEEB A. ANSARI, PETER M. DELANGE, PAUL F. HICKEY, SCOTT YOUNGSTROM, and ENTEROMEDICS, INC. | : JURY TRIAL DEMANDED : : CLASS ACTION : : : : : |
| Defendants, | : : |
| and | : : |
| ENTEROMEDICS, INC., | : : |
| Nominal Defendant. | : |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                                       December 18, 2018

      Presently before the Court is Plaintiff's "Motion for Final Approval of Settlement and for an Award of Attorneys' Fees and Reimbursement of Expenses." If approved, the settlement will resolve the instant matter, in which Plaintiff alleges that the Defendants, executive officers and members of the board of directors of Enteromedics, Inc. ("Enteromedics" or the "Company"), breached their fiduciary duties to the stockholders. For the reasons that

follow, the Court will grant the motion, certify the settlement class, approve the class action settlement, and grant the request for attorney's fees and expenses.

## I. BACKGROUND

### A. Factual Background and Procedural History

On February 24, 2017, Plaintiff filed a derivative class action complaint on behalf of EnteroMedics, alleging claims for breach of fiduciary duty and unjust enrichment against Defendants. Plaintiff alleged that Defendants breached their fiduciary duties by: (1) making false and misleading statements in connection with soliciting stockholder approval of: (a) an amendment to EnteroMedics's Certificate of Incorporation to effect a reverse stock split of the Company's outstanding and issued shares of common stock (the "Reverse Stock Split"); and (b) an amendment to the Company's Second Amended and Restated 2003 Stock Incentive Plan (the "Stock Plan") that increased the number of shares available for issuance under the Stock Plan; and (2) granting and receiving stock options in February 2017 after the Reverse Stock Split and Stock Plan were approved by stockholders.

Defendants moved to dismiss, and after a hearing, the Court denied the motion. The parties then engaged in significant discovery. Towards the end of discovery, after more fully understanding the strengths and weaknesses of their positions, the parties began settlement discussions and negotiated the current proposed settlement agreement. The Court held a hearing on the motion for preliminary approval of the settlement on September 24, 2018, which it granted on September 28, 2018. The parties sent settlement notices to the class members as described in the Court's September 28, 2018 memorandum granting preliminary approval. The Court held a hearing on the current motion on December 17, 2018.

B.  The Proposed Class Action Settlement

The terms of the proposed class action settlement agreement are set forth in the Stipulation of Settlement and Compromise (the "Settlement Agreement"). Mot for Prelim. App. Ex. A, ECF No. 36-1. The basic terms are outlined below.

1.  The Class

The class is defined as:

> a non-opt-out class for settlement purposes of all record holders and beneficial owners of common stock of EnteroMedics who held or owned such stock during the Class Period (defined below), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, legatees, devisees, assigns and transferees, immediate and remote, and any other person or entity acting for or on behalf of any of the foregoing. Excluded from the Class are Defendants and their immediate family, any entity in which any Defendant has a controlling interest, and any successors-in-interest thereto.

Id. at 5. The class period is defined "the period of November 3, 2016 through February 24, 2017, inclusive." Id.

2.  The Proposed Settlement Terms

The Settlement Agreement provides for the cancellation and rescission of the stock options at issue, and stockholders will have the opportunity to vote on any additional stock options for Defendants made in connection with the rescission. Second, the board of directors is required to make proportional adjustments to the Stock Plan and other Company equity plans to account for any changes in EnteroMedics's capitalization, thus protecting stockholders from unanticipated dilution. Third, the board of directors is amending the Company's equity plan to add a specific provision imposing an annual cap on equity compensation for non-employee directors and will seek stockholder approval of this amendment.

All costs associated with notice to the class were borne by EnteroMedics. The Settlement Agreement also provides for, and counsel currently seeks, an award of attorneys' fees of $190,000 which includes $174 in travel expenses and a $4,000 incentive award for Plaintiff.

In exchange for the benefits provided by the settlement, class members agree to release all claims that they alleged or could have alleged in the action.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only after "a hearing and only on finding that it is fair, reasonable, and adequate." Id. The factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998) (quoting Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)).

Under Rule 23(h), at the conclusion of a successful class action, class counsel may apply to a court for an award of attorney's fees. The amount of an attorney's fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous[.]" Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 (3d Cir. 2011) (en banc) (internal quotation marks omitted).

The Court must also certify the settlement class. While the exact process a district court should follow when presented with a settlement class is not prescribed by Rule 23, under Third Circuit law, the court must determine that the settlement class meets the requirements for

class certification under Rule 23(a) and (b). In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014); In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 778 (3d Cir. 1995) (providing that settlement class status "should not be sustained unless the record establishes, by findings of the district judge, that the [ ] requisites of [ ] Rule [23(a) and (b)] are satisfied").

      A.      Whether Class Certification Is Proper

At the final fairness stage, the court must undertake a "rigorous analysis" as to whether class certification is appropriate. Nat'l Football League Players, 775 F.3d at 582-83, 586. Under Rule 23(a), Plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(2), under which Plaintiff seeks class certification, requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Shelton v. Bledsoe, 775 F.3d 554, 561 (3d Cir. 2015) (internal quotation marks omitted).

> [F]or certification of a 23(b)(2) class seeking only declaratory or injunctive relief, a properly defined 'class' is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2) and our guidance in Barnes [v. Am. Tobacco Co.], 161 F.3d [127,] 143 [3d Cir. 1998)]; and (3) is capable of the type of description by a "readily discernible, clear, and precise statement of

>the parameters defining the class," as required by Rule 23(c)(1)(B) and our discussion in Wachtel [ex rel. Jesse v. Guardian Life Ins. Co. of Am.], 453 F.3d [179,] 187 [(3d Cir. 2006]). No additional requirements need be satisfied."

Id., at 563.[1]

    1.    Rule 23(a) Factors

        a.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds forty, the numerosity prong has been met. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here as the Company has 54,924,998 outstanding shares, which the parties asserted represents thousands of class members.

        b.    Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality element requires that the plaintiffs "share at least one question of fact or law with the grievances of the prospective class." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

---

[1]    As a result, the Third Circuit's ascertainability requirement is not applicable in a Rule 23(b)(2) case. Shelton, 775 F.3d at 563.

In this case, there are adequate common questions of fact and law, including: (1) whether the proxy was materially misleading; (2) whether Plaintiff and the other members of the class were harmed as a result; (3) whether Defendants breached their fiduciary duties by issuing the proxy and administering the Stock Plan in a manner that was inconsistent with representations made in the proxy; and (4) whether Plaintiff and the class are entitled to injunctive relief as a result.

c. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004). The typicality threshold is low. Seidman v. American Mobile Sys., Inc., 157 F.R.D. 354, 360 (E.D. Pa. 1994).

This element is satisfied because Plaintiff's claims are typical of the claims of the other members of the class and their interests are aligned since they were all unable to cast an informed vote on the Reverse Stock Split and Stock Plan Amendment as a result of Defendants' alleged misconduct.

d. Adequacy of Representation

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of

interest between the named parties and the class they seek to represent." Amchem v. Windsor, 521 U.S. 591, 625 (1997). The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." Prudential Ins. Co., 148 F.3d at 312 (internal quotation marks omitted). Regarding the qualifications of counsel, Fed. R. Civ. P. 23(g) provides that, in appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. Pa. 23(g)(1)(A). Also, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P 23(g)(1)(B).

After reviewing relevant documents, the Court concludes that Plaintiff's counsel, Purcell Julie & Lefkowitz, LLP of New York and Farnan, LLP of Delaware, have substantial experience working on behalf of stockholders of Delaware corporations and are well-qualified to represent the class. Plaintiff's counsel have asserted that opposing counsel and they frequently litigate breach of fiduciary claims and have the necessary expertise and knowledge to identify the underlying wrongdoing, bring the litigation in a representative capacity, and negotiate the proposed settlement. Counsel further contend that they have spent significant time, effort, and resources on the case, demonstrating their commitment to the class. The Court finds no reason to doubt these assertions.

Second, Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief. Defendants' alleged breach of fiduciary duty impacted all Company stockholders by preventing them from casting an informed vote on important corporate business, which, the class alleges, tainted the stock options Defendants issued following that vote. The Court concludes that there are no conflicts of interest between the Plaintiff and the class such that the adequacy of representation requirement is met.

In sum, Plaintiff has demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

### 2. Rule 23(b)(2) Factors

As provided, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A class under Rule 23(b)(2) is proper if it: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2); and (3) is capable of being described in a readily discernible, clear, and precise statement of the parameters defining the class, as required by Rule 23(c)(1)(B). Shelton, 775 F.3d at 561.

Here, the class meets the requirements of Rule 23(a). Moreover, the class is cohesive in that there are no apparent individualized issues among the class members. See Barnes, 161 F.3d at 143 (providing that a court "must determine whether a proposed (b)(2) class implicates individual issues"). All of the class members have the same issues and seek the same relief. Finally, in that the parties have narrowly defined the class as shareholders during a finite time period, the class parameters are clear and readily discernable.

B.      Whether the Proposed Settlement Is Fair

After class certification, the court must approve the settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). Prudential, 148 F.3d at 316-17. Where the parties simultaneously seek certification and settlement approval, the Third Circuit requires "'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." Id. at 317 (quoting Gen. Motors Corp., 55 F.3d at 785). This heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh, 521 F.2d at 156. There is a presumption of fairness for a settlement negotiated at arm's length by experienced advocates following sufficient discovery whenever the settlement has not drawn meaningful objections from stockholders. In re Cendant Corp. Litig., 264 F.3d 201, 232 n.18 (3d Cir. 2001). In that this is the posture of this case, the presumption applies.

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. Specifically whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to

each other. Fed. R. Civ. P. 23(e)(2). These factors are in many respects a codification of various factors set forth in Girsh, 521 F.2d 153.

Here, class counsel is experienced and represented the class well in that they have negotiated a settlement that redresses all of Plaintiff's complaints. The settlement was signed at arm's length after the parties had a full understanding of the strengths and weaknesses of their cases. The relief is adequate in that it addresses Plaintiff's claims and provides protections against future issues. Since all of the relief is intuitional, there is no concern regarding distribution to the class. As discussed below, the attorney's fees sought are reasonable and do not impact the class' relief. Finally, the settlement treats all relevant class members equally. Thus, Rule 23(e) is satisfied.

In Girsh, the Third Circuit identified nine factors to be considered when determining the fairness of a proposed settlement: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.3d at 157. The Court addresses the Girsh factors, some individually, some together as a group.

1.   The Complexity, Expense, and Likely Duration of the Litigation

The first Girsh factor is the complexity, expense, and likely duration of the litigation, which aims to take into account the "probable costs, in both time and money, of continued litigation." Cendant Corp., 264 F.3d at 233 (internal quotation marks omitted).

This is a complex shareholder derivative action. See Maher v. Zapata Corp., 714 F.2d 436, 455 (5th Cir. 1983) (derivative litigation "is notoriously difficult and unpredictable" and poses substantial procedural and legal hurdles). It would have been expensive to bring to trial and would not have provided significant additional relief. Plaintiff has received what he sought in the settlement: rescission of the stock options at issue and protections to avoid similar future situations. Continued litigation would have also required significant and costly expert discovery. Summary judgment motions have not yet been filed and, thus, the litigation would have continued for a substantial period of time. This factor weighs in favor of settlement.

### 2. The Reaction of the Class to Settlement

The second Girsh factor to be considered is the reaction of the class to the settlement. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." Gen. Motors, 55 F.3d at 812.

In that no shareholder has objected to the settlement, this factor weighs heavily in favor of settlement. See, e.g., Prudential, 148 F.3d at 318 (affirming district court's conclusion that class reaction was favorable when 19,000 out of 8,000,000 class members opted out and 300 objected); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that the second Girsh factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms).

### 3. The Stage of the Proceedings

The third factor to be considered is the stage of the proceedings and the amount of discovery completed. This Girsh factor requires the Court to evaluate whether Plaintiffs had an "adequate appreciation of the merits of the case before negotiating" settlement. Prudential, 148 F.3d at 319 (internal quotation marks omitted).

The Court concludes that the parties had an adequate appreciation of the issues. For almost two years, the parties have litigated this action, which has included the exchange of significant discovery and the litigation of a motion to dismiss. The time and work put into the case indicates that Plaintiff had a good understanding of the merits of the action. Thus, this factor weighs in favor of settlement.

### 4. The Risks of Continued Litigation

The fourth, fifth, and sixth Girsh factors are the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class action throughout the trial. These factors "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." Prudential, 148 F.3d at 319. As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." Gen. Motors, 55 F.3d at 814. As to damages, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." Cendant Corp., 264 F.3d at 238–39 (quoting Gen. Motors, 55 F.3d at 816). Finally, [b]ecause the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor [concerning the risks of maintaining the class action through trial] measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. Warfarin, 391 F.3d at 537 (internal quotation marks and citations omitted).

As discussed above, the parties have had sufficient opportunity to evaluate the strengths and weaknesses of the case, including the risks of continuing the litigation. Such risks include the possibility of class decertification or the class losing their claims given the complex nature of the action and the factual findings that would be necessary. Such findings include

13

whether the Proxy disclosures were materially misleading, which Defendants have strongly contested, and which depends on the jury evaluating the "total mix" of the information provided to the stockholders. Plaintiff's success was certainly not assured. Moreover, the Settlement Agreement addresses Plaintiff's concerns by rescinding the stock options at issue and protecting the class members from future issues of a similar nature. Trial could have provided little if any additional benefit. Thus, these factors weigh in favor of the settlement.

5.     <u>The Ability of the Defendant to Withstand Greater Judgment</u>

The seventh factor regards the ability of the defendant to withstand a greater judgment. This factor is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement," <u>Reibstein v. Rite Aid Corp.</u>, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). In that there is no monetary component to this settlement, this factor in inapplicable.

6.     <u>The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation</u>

The eighth and ninth factors are the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. These factors examine "whether the settlement represents a good value for a weak case or a poor value for a strong case." <u>Warfarin</u>, 391 F.3d at 538.

Plaintiff and the class have received all of the relief they sought. As discussed, this is a complex case that would require difficult factual determinations. Settling now saves money, provides the relief sought, and avoids the uncertainty of trial. This factor also weighs in favor of settlement.

It is clear that upon balancing of the <u>Girsh</u> factors, they tip strongly in favor of the settlement. Thus, the Court finds the settlement fair and will approve the Settlement Agreement.

14

C.     Whether the Notice to the Class Was Adequate

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." Prudential, 148 F.3d at 306. Rule 23 includes two provisions concerning notice of the class members. First, Rule 23(c)(2)(A) provides that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Second, Rule 23(e)(1)(B) provides that "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327 (internal quotation marks omitted).

In the Court's memorandum and order granting preliminary approval of the settlement, the Court approved the notice program. At that time, the Court reviewed the parties' proposed notice procedures, including the language of the notices, and found that they were clear, included all requisite information, and met the requirements of Rule 23(c)(2)(B) and (e).

Beginning on October 15, 2018, pursuant to the Court's order, EnteroMedics mailed the notice to stockholders of record or class members at their last known address appearing in the Company's stock transfer records. The notice advised stockholders that they had the right to object, explained the procedure for making such objections, and provided several weeks for objections to be made. No class member objected.

Accordingly, the Court finds that the notice program used in this case satisfied Rule 23(c)(2)(A) and (e) and was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, the class members' rights to object, and the applicability of a final judgment on all participating class members. Fed. R. Civ. P. 23(c)(2)(B); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

  D.  <u>Whether the Attorney's Fees and Expenses Reasonable</u>

When class counsel successfully settle a class action, they may apply for reasonable attorney's fees and nontaxable costs. Fed. R. Civ. P. 23(h). "[A] thorough judicial review of fee applications is required in all class action settlements." Gen. Motors, 55 F.3d at 819. The amount of the fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous[.]" Sullivan, 667 F.3d at 329 (internal quotation marks and citation omitted).

Plaintiff's counsel seeks $190,000 in fees and expenses which includes a $4,000 service award to Plaintiff and $174 in travel costs.[2] No monetary award was sought by Plaintiff. Instead, counsel's efforts resulted in significant corporate governance reforms that will provide long-term benefits to the Company and its stockholders. Counsel negotiated the fees only after the settlement terms were substantially agreed upon.

Delaware courts use the factors found in Sugarland Indus. v. Thomas, 420 A.2d 142 (Del. 1980) to determine the fairness of counsel fees.[3] The Sugarland factors are (1) the

---

[2]  Counsel previously provided that Purcell, Julie & Lefkowitz, LLP would receive 90% of the attorney's fees and Farnan, LLP would receive 10%.

[3]  This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(a). "State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity . . ., provided such rules do not run counter to federal statutes or policy considerations." Mor on behalf of AmerisourceBergen Corp. v. Collis, 654 F. App'x 553,

16

benefit achieved; (2) whether representation was undertaken on contingent basis; (3) time and effort expended by counsel and quality of work performed; (4) complexity of case; and (5) standing and skill of counsel. Id. at 149-50. The Court may examine the lodestar as a "backstop check" to confirm the reasonableness of the fees. In re Abercrombie & Fitch Co. Shareholders Derivative Litig., 886 A.2d 1271, 1273-74 (Del. 2005).

Here, the benefit achieved reverses the effects of the alleged misconduct (by requiring cancellation of the challenged stock options) and provides corporate governance reforms to prevent similar issues in the future. Counsel litigated the matter on a contingent basis and expended significant time and effort in this complex and uncertain stockholder derivative action. Counsel bore all costs required to prosecute the case, while assuming the risk that they would not prevail and would receive nothing. As noted during the preliminary approval proceedings, Plaintiff's counsel is skilled and experienced.

According to Plaintiff's counsel's affidavits, Purcell, Julie & Lefkowitz, LLP expended 307.50 hours at rates between $400 and $725 an hour in connection with the litigation. Counsel calculates the lodestar as $207,662.50 for this work with $174 in travel expenses. Farnan, LLP expended 45.6 hours in the litigation. Given that the Sugarland factors are met and the fees sought are less than the lodestar, the Court concludes that the fees and expenses are reasonable.

Plaintiff's counsel asserts that the $4,000 service award for Plaintiff is appropriate and reasonable in light of Plaintiff's willingness to spend the time on, and share the burden of, litigating this case alongside his counsel for nearly two years. Plaintiff's counsel has represented

---

558 (3d Cir. 2016) (quoting McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 n.47 (3d Cir. 1990)).

that in Delaware courts the $4,000 award falls within the range of reasonableness for this type of case. Defense counsel agrees with this assessment. Although neither side supplied authority on the issue, the Court interprets the reasonableness of the award, much like the question of attorney's fees, to be a matter of state law. The Court concludes that under Delaware law, the $4,000 service award is reasonable, even though the request might be questionable under federal law given that counsel was unable to describe any specific work performed by Plaintiff on behalf of the class that would entitle him to such an award.

**III.    CONCLUSION**

In that Rules 23(a) and (b)(2) have been met, the Court certifies the settlement class. Moreover, the Court concludes: (1) that the settlement is fair, reasonable, and adequate; (2) that notice was effected in a reasonable manner; and (3) that Plaintiff's counsel's fee request is reasonable and supported. Therefore, the Court will grant Plaintiff's motion and approve the Settlement Agreement and payment of the attorney's fees.

An appropriate order follows.